UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

PAULA BERRY,

                Plaintiff,

v.                                                                     Case No. 5:09-cv-328-Oc-GRJ

MICHAEL J. ASTRUE, Commissioner of Social
Security,

                Defendant.
_____/

## ORDER

Plaintiff appeals to this Court from a final decision of the Commissioner of Social Security (the "Commissioner") denying her application for disability insurance benefits and Supplemental Security Income. (Doc. 1.) The Commissioner has answered (Doc. 11) and both parties have filed briefs outlining their respective positions. (Docs. 14 & 17.) For the reasons discussed below, the Commissioner's decision is due to be **AFFIRMED.**

## I. PROCEDURAL HISTORY

On October 10, 2006, Plaintiff filed applications for a period of disability, disability insurance benefits (DIB), and Supplemental Security Income (SSI) claiming a disability onset date of March 7, 2006. (R. 93-97, 98-100.) Plaintiff's applications were denied initially, and upon reconsideration. (R. 30-36, 53-54, 56-62.) On December 4, 2008, ALJ Albert D. Tutera conducted Plaintiff's administrative hearing. (R. 527-43.) On March 30, 2009, ALJ Tutera issued an unfavorable decision. (R. 16-25.)   On May 27,

2009, review was denied by the Appeals Council. (R. 7-10.)   Plaintiff then appealed to this Court. (Doc. 1.)

## II. <u>STANDARD OF REVIEW</u>

The Commissioner's findings of fact are conclusive if supported by substantial evidence.[1] Substantial evidence is more than a scintilla, i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.[2]

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.[3] The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.[4] However, the district court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with

---

[1] See 42 U.S.C. § 405(g).

[2] See Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)); accord, Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

[3] See Edwards, 937 F.2d at 584 n.3; Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).

[4] See Foote, 67 F.3d at 1560; accord, Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding that the court must scrutinize the entire record to determine reasonableness of factual findings); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (finding that the court also must consider evidence detracting from evidence on which the Commissioner relied).

sufficient reasoning to determine that the Commissioner properly applied the law.[5]

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death, or has lasted or can be expected to last for a continuous period of not less than twelve months.[6] The impairment must be severe, making Plaintiff unable to do her previous work, or any other substantial gainful activity which exists in the national economy.[7]

The ALJ must follow five steps in evaluating a claim of disability.[8] First, if a claimant is working at a substantial gainful activity, she is not disabled.[9] Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled.[10] Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled.[11] Fourth, if a claimant's impairments do not prevent her from doing past

---

[5] See Keeton v. Dep't Health and Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994).

[6] See 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505.

[7] See 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

[8] See 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991).

[9] See 20 C.F.R. § 404.1520(b).

[10] See 20 C.F.R. § 404.1520(c).

[11] See 20 C.F.R. § 404.1520(d).

3

relevant work, she is not disabled.[12] Fifth, if a claimant's impairments (considering her RFC, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled.[13]

The burden of proof regarding the plaintiff's inability to perform past relevant work initially lies with the plaintiff.[14] The burden then temporarily shifts to the Commissioner to demonstrate that "other work" which the claimant can perform currently exists in the national economy.[15] The Commissioner may satisfy this burden by pointing to the grids for a conclusive determination that a claimant is disabled or not disabled.[16]

However, the ALJ should not exclusively rely on the grids when the claimant has a non-exertional impairment which significantly limits his or her basic work skills or when the claimant cannot perform a full range of employment at the appropriate level of exertion.[17] In a situation where both exertional and non-exertional impairments are

---

[12] See 20 C.F.R. § 404.1520(e).

[13] See 20 C.F.R. § 404.1520(f).

[14] See Walker v. Bowen, 826 F.2d 996, 1002 (11th Cir. 1987). *See Also* Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001).

[15] See Doughty at 1278 n.2 ("In practice, the burden temporarily shifts at step five to the Commissioner. The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform. In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists. The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations.") (*internal citations omitted*).

[16] See Walker at 1002 ("[T]he grids may come into play once the burden has shifted to the Commissioner to show that the claimant can perform other work.")

[17] See Phillips v. Barnhart, 357 F. 3d 1232, 1243 (11th Cir. 2004); Wolfe v. Chater, 86 F.3d 1072, 1077 (11th Cir. 1996); Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Walker at 1003 ("the grids may be used only when each variable on the appropriate grid accurately describes the claimant's

(continued...)

found, the ALJ is obligated to make specific findings as to whether they preclude a wide range of employment.[18]

The ALJ may use the grids as a framework to evaluate vocational factors so long as he introduces independent evidence of the existence of jobs in the national economy that the claimant can perform.[19] Such independent evidence may be introduced by a vocational expert's testimony, but this is not the exclusive means of introducing such evidence.[20] Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he or she is not capable of performing the "other work" as set forth by the Commissioner.[21]

### III. SUMMARY OF THE RECORD EVIDENCE

Plaintiff was thirty-nine (39) years old on the alleged disability-onset date and was forty-two (42) years old at the time of the ALJ's decision. (R. 483-84.) Plaintiff has a high school education and completed some college. (R. 530.) She worked as a CNA in nursing homes and hospitals for fifteen years. (R. 163.) Plaintiff contends that she has been unable to work since March 7, 2006 due to neck, shoulder, hip, leg and left elbow injuries, carpal tunnel in both hands, diabetes, high blood pressure, heart murmur and seizures. (R. 165.)

---

[17](...continued)
situation").

[18] See Walker at 1003.

[19] See Wolfe at 1077-78.

[20] See id.

[21] See Doughty at 1278 n.2.

At the hearing, Plaintiff testified that she fell at work in February 2006 and hurt her neck, shoulder, right hip and left elbow. (R. 530.) She still has pain in her right hip and right shoulder. (R. 531.) Plaintiff testified that she is not currently taking pain medication because she does not have the money. She uses a cane for balance. (R. 532.) Plaintiff has diabetes, for which she is taking insulin and metformin; they do not completely control her blood sugar levels (R. 532, 540) and heart disease that causes her shortness of breath and chest pain several time a week. (R. 534.) She is also being treated for chronic bronchitis and as a result cannot be around smoke or fumes. (R. 538.) In addition, Plaintiff has carpal tunnel syndrome and as a result she has trouble grasping and holding onto things (R. 537-38), high blood pressure, and anemia. (R. 541.)

Plaintiff testified that she spends most of her day sitting or laying down – sleeping, reading and watching television. (R. 534, 535.) She drives to get medicine, to the post office and to the doctor and she sometimes goes to church. (R. 535.) Plaintiff reported having trouble lifting eight pounds, she can stand and walk for a few minutes and she can sit for a few minutes at a time. (R. 536.) She has trouble reaching her hands overhead. Plaintiff also reported trouble with dizziness and tiredness. (R. 540-41.)

In February 2006, Plaintiff tripped over a wheelchair footrest at work and fell on the ground, injuring her neck, shoulder, right hip and left elbow. (R. 530.) She was seen at Urgent Care from March 3, 2006 through June 9, 2006. (R. 231-51.) On March 3, 2006, Plaintiff reported shoulder, neck and right leg pain. X-rays of the cervical spine showed straightening of the normal lordosis and the assessment was cervical strain. (R.

246-47.) She was prescribed Norflex and limited to lifting no greater than ten pounds. On March 10, 2006, it was noted that Plaintiff was able to drive, cook her own meals and perform light housekeeping. (R. 243.) Plaintiff began physical therapy at Heartland, and continued through April 2006, although she reported limited improvement and missed several sessions. (R. 202-30.)

On March 24, 2006, Rogelio V. Pamintuan, M.D. examined Plaintiff and noted good range of motion of the paravertebral musculature and the left hip. (R. 242.) Plaintiff reported that physical therapy was helping but that she ran out of medicine several days earlier. On April 12, 2006, Plaintiff continued to report pain in the neck, right shoulder, with intermittent numbness in the right arm, as well as pain in her right hip and left elbow. (R. 240.) She reported minimal relief from pain medications. Plaintiff was "strongly advised" to reschedule her missed therapy appointments and encouraged to continue a home exercise program. Plaintiff was directed to avoid lifting greater than 20 pounds with the right upper extremity. The assessment was cervical strain and persistent pain with possible symptom magnification. On April 26, 2006, Plaintiff's physical examination was largely normal, showing only mild spasm of the paravertebral muscles of the neck and mild tenderness of the left elbow and right hip. (R. 237.) Dr. Parmintuan kept her on light-duty status of a lifting restriction of ten pounds. (R. 238.)

On May 25, 2006, Plaintiff reported that she was not taking any medications because they did not help. (R. 234.) During June and July 2006, Plaintiff participated in the physical reconditioning program at Southeastern Physical Therapy. (R. 292-97, 440-451.) Upon discharge, it was noted that Plaintiff seemed lethargic and unmotivated; even so, her demonstrated abilities placed her in a sedentary to light physical demand

7

level for work. (R. 292.)   In September 2006, Plaintiff had massage therapy at Munroe Regional. (R. 289-90.)

On June 13, 2006, Oscar B. DePaz, M.D., performed a comprehensive medical evaluation. (R. 312-15.)  Plaintiff reported continuous severe pain in her neck, upper back, shoulders, left elbow and right leg; and numbness, tingling and weakness in her fingers.  It was noted that Plaintiff was independent in mobility and activities of daily living and that her gait was normal.  On examination, there was some tenderness in the cervical spine, paramuscluature of right upper trapezius, thoracic region and low back area; Plaintiff was mildly to moderately restricted throughout the cervical and thoracolumbar spine with noted decreased effort during testing.  Dr. DePaz limited Plaintiff to light to moderate level activity with no lifting greater than 25-30 pounds and no repetitive overhead activities, with breaks as needed. On August 24, 2006, Plaintiff continued to complain of pain in the neck, upper back, shoulder and left elbow. (R. 301-03.)  Dr. DePaz found that she had reached MMI and that she was at a "light activity level."   On September 14, 2006, Dr. DePaz released Plaintiff to light duty activity with no lifting greater than 20-25 pounds and no repetitive stooping, squatting, twisting or bending activities, with breaks as needed.  (R. 300.)

On June 13, 2007, Plaintiff was seen at Premier Medical Center in Charleston, South Carolina for a disability evaluation. (R. 324-29.)  On July 16, 2007, x-rays of the right hip were unremarkable and x-rays of the cervical spine showed degenerative disc disease at C4-C5 and C5-C6. (R. 328.)

Beginning October 4, 2007,  Plaintiff was seen at Community Health Services. (R. 330-71.)  At her initial appointment, she complained of recurrent boils and occasional

chest pain which resolved on its own. On follow up visits, she was diagnosed with upper respiratory infection; benign hypertension; type II diabetes, uncontrolled; history of hypothyroid; history of seizure disorder; arthritis; history of chronic pain; history of uterine fibroids; history of dysmenorrhea; dysuria; chronic leg/feet pain; chronic low-back/right-hip pains. She was prescribed numerous medications including Metformin, Actos Plus, Glipizide, insulin, Synthroid, NORVASC, and Dilantin.  (R. 333, 338, 360.)   In March 2008, Plaintiff reported body aches and chronic pain and the assessment included arthritis.  (R. 342-43, 345-46.)  On March 27, 2008, Melissa DeVaughn, ARNP wrote a note that Plaintiff was unable to work at that time due to several medical conditions that required medical care and monitoring. (R. 341.)   In April and May 2008, it was noted that Plaintiff was not compliant and she was strongly urged to follow diet for diabetes. (R. 335, 337, 443.)  On April 29, 2008, Plaintiff reported feeling "ok." (R. 336.)   On August 5, 2008, Plaintiff denied chest pain and reported some back pain. (R. 426.)  On September 23, 2008, Plaintiff had a B-12 shot and was "doing ok." (R. 418.)   On November 6, 2008, Della M. Tuten, ARNP wrote on a prescription pad, "[p]lease help pt with walking cane, per her request.  Needs assistance to purchase." (R. 455.)

Joseph P. Pagano, M.D. performed a consultative examination on July 26, 2008 (R. 372-76.)   Plaintiff reported constant pain in her neck, right shoulder, right hip and left elbow resulting from her work-related injury in 2006; bilateral carpal tunnel; insulin dependent diabetes mellitus but she was not taking her medication currently; heart murmur; and seizure disorder that is well-controlled with medication. Claimant stated that she could dress herself, feed herself, drive, do dishes and shop.   On examination, Dr.

9

Pagano found that Plaintiff ambulated without difficulty; she got on and off the exam table, out of the chair and dressed/undressed without any difficulty.

With respect to her neck, right shoulder, right hip, left elbow injury, Dr. Pagano found that she had an entirely normal physical examination with the exception of limited range of motion in her left shoulder and right hip which in his opinion "represented an extraordinarily poor effort." He rated her limitation as minimal. As for carpal tunnel, Plaintiff had a relatively normal wrist exam with the exception of fine motor control, which Dr. Pagano thought represented a very poor effort. He rated her limitation as minimal. As for heart murmur, he noted that Plaintiff has a 2/6 systolic murmur and that her limitation was minimal. Finally, as for Plaintiff's seizure disorder, Dr. Pagano rated her limitation as minimal because Plaintiff has not had a seizure for two years, she can drive a car, and her seizures are controlled on medication.

On August 14, 2008, James Andriole, D.O., a non-examining state agency consultant completed a RFC assessment. (R. 377-84.)   He opined that Plaintiff could occasionally lift 20 pounds; frequently lift 10 pounds; stand and/or walk about 6 hours in an 8-hour workday; sit about 6 hours in an 8-hour workday; and push and/or pull without limitation. He found that she was limited to occasionally climbing ramps/stairs, balancing, stooping, kneeling, crouching, and crawling; never climbing ladder/rope/scaffolds; and avoiding concentrated exposure to hazards.

On August 15, 2008, Plaintiff presented to the Emergency Department at ORMC with complaints of chest pain and was admitted to the hospital. (R. 393-407.)  She returned on December 2, 2008 with complaints of pain in the posterior/anterior right lower extremity (R. 472-73) and again on February 13, 2009 with complaints of weakness and

severe anemia. (R. 496-98.) The impressions were severe anemia with generalized weakness, fibroid uterus, possible recent non-ST myocardial infarction, arteriosclerotic heart disease with PTCA and stent, hypertension, hyperlipidemia, chronic obstructive pulmonary disease (COPD), seizure disorder and obesity.

On November 28, 2008, Karen E. Hartsell, PT, DPT performed a physical capacity assessment. (R. 460-66.) Ms. Hartsell opined that Plaintiff could not perform sedentary and/or light to heavy work activities. She concluded that Plaintiff could only sit or stand for 5 to 10 minutes; occasionally lift up to 5 pounds; and walk for less than 2 hours in an 8-hour workday.

The ALJ determined that Plaintiff suffers from cervical degenerative disc disease and diabetes mellitus. (R. 18.) The ALJ determined that, while these impairments were severe, Plaintiff did not have an impairment or combination of impairments which met or medically equaled one of the impairments listed in Appendix 1, Subpart P of Social Security Regulation No. 4. (R. 18.)

The ALJ determined that Plaintiff retained the physical RFC to perform the full range of sedentary work except to occasionally climb, balance, stoop, kneel, crouch or crawl. (R. 19-23.) In making this determination, the ALJ found Plaintiff's subjective complaints not fully credible. The ALJ found that Plaintiff could not perform her past relevant work. (R. 24.) Then, using the Grids as a framework, the ALJ found that Plaintiff was not disabled. (R. 24.)

## IV. **DISCUSSION**

Plaintiff raises two arguments on appeal. First, Plaintiff argues that the ALJ failed to properly evaluate Plaintiff's subjective complaints. Second, Plaintiff argues that the ALJ erred by applying the Grids and not taking testimony from a vocational expert.

### A. The ALJ Properly Evaluated Plaintiff's Subjective Complaints

Plaintiff argues that the ALJ failed to properly consider Plaintiff's subjective complaints. The ALJ found that while Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, her statements "concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (R. 25-26.)

In evaluating disability, the ALJ must consider all of a claimant's impairments, including her subjective symptoms, such as pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence.[22] When a claimant attempts to establish a disability through her own testimony of pain or other subjective symptoms, she must show evidence of an underlying medical condition and must demonstrate either that objective medical evidence confirms the severity of the alleged symptom arising from that condition or that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged symptoms.[23]

---

[22] 20 C.F.R. § 404.1528.

[23] Foote, 67 F.3d at 1560.

If an ALJ decides not to credit a claimant's testimony about subjective complaints, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding.[24] While an adequate credibility finding need not cite "particular phrases or formulations [...] broad findings that a claimant lacked credibility and could return to her past work alone are not enough to enable a court to conclude that the ALJ considered her medical condition as a whole."[25] A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record.[26] However, a lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case.[27] If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding."[28] As a matter of law, the failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true.[29]

---

[24] Foote, 67 F.3d at 1561-62; Jones v. Department of Health and Human Servs., 941 F.2d 1529, 1532 (11th Cir. 1991) (finding that articulated reasons must be based on substantial evidence).

[25] Foote at 1562-1563.

[26] Hale v. Bowen, 831 F.2d 1007, 1012 (11th Cir. 1987); MacGregor v. Bowen, 786 F.2d 1050, 1054 (11th Cir. 1986).

[27] Smallwood v. Schweiker, 681 F.2d 1349, 1352 (11th Cir. 1982).

[28] Foote, 67 F.3d at 1562 (quoting Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983) (holding that although no explicit finding as to credibility is required, the implication must be obvious to the reviewing court).

[29] Id. at 1561-62; Cannon v. Bowen, 858 F.2d 1541, 1545 (11th Cir. 1988).

In the instant case, it appears as though the ALJ applied the Eleventh Circuit's pain standard "threshold"[30] assessment to Plaintiff's subjective complaints. The ALJ stated that he considered Plaintiff's subjective complaints in light of 20 C.F.R. §§ 404.1529 and 416.929. (R. 22.)   In applying the pain standard, the ALJ found that Plaintiff met the initial burden of showing underlying medical conditions that could be expected to give rise to symptoms. Once Plaintiff met this initial burden, however, the ALJ found Plaintiff's subjective complaints were not fully credible considering Plaintiff's own description of her activities and lifestyle; the degree of medical treatment required; discrepancies between Plaintiff's assertions and information contained in the documentary reports; Plaintiff's demeanor at the hearing; reports of the treating and examining practitioners; medical history; findings made on examination, and Plaintiff's assertions concerning her ability to work.   (R. 21-23.)

The ALJ first noted that Plaintiff's activities of daily living were inconsistent with her complaints of disabling pain.  (R. 21.) Plaintiff testified that she drives, watches television, reads and attends church (R. 534-35) and reported to Dr. Pagano that she dresses and feeds herself, does the dishes and goes shopping. (R. 373.)   It is well-settled that the ALJ may consider household and social activities in evaluating claims of disabling pain.[31]

The ALJ also reasoned that Plaintiff's medical treatment had been routine and conservative. (R. 22-23.)   He also noted that Plaintiff's medical treatment was generally successful in controlling her allegedly disabling symptoms. (R. 22.)  In March 2006,

---

[30] Marbury, 957 F.2d at 839.

[31] See Dyer v. Barnhart, 395 F.3d 1206, 1209-12 (11th Cir. 2005); Macia v. Bowen, 829 F.2d 1009, 1012 (11th Cir. 1987); 20 C.F.R. §404.1529(c)(3)(i); 20 C.F.R. §416.929(c)(3)(i).

Plaintiff told her physical therapist that she was "feeling better" and that her neck was better. (R. 216, 224.)  In addition, although Plaintiff reported getting some relief from physical therapy, she canceled or missed four appointments and she was "strongly advised" to reschedule the missed sessions.  (R. 204, 240.)

The ALJ also considered the evidence regarding Plaintiff's medications.  Plaintiff reported that she had no seizures with Dilantin and that Bayer aspirin eased her heart pain. (R. 155, 161.)  The ALJ also correctly pointed out periods of time during which Plaintiff took no medication.  Indeed, the record shows that on  March 24, 2006, May 25, 2006, October 4, 2007, November 15, 2007, February 27, 2008, and April 29, 2008, Plaintiff reported that she was out of medication or not taking medication. (R. 234, 242, 336, 349, 354, 360.)  Moreover, there is evidence that Plaintiff was not compliant with her medications and/or diet. (R. 335, 337.)  While there is some evidence that Plaintiff's medications caused drowsiness, the side effects were generally mild and there is no evidence suggesting that they would interfere with Plaintiff's ability to perform work activities.

The ALJ also pointed to evidence that Plaintiff was exaggerating her symptoms.  In April 2006, Elaine Davis, ARNP noted that Plaintiff had persistent pain with possible symptom magnification. (R. 240.)  Then in September 2006, the licensed massage therapist found that Plaintiff "might be expressing some symptom magnification." (R. 289-90.)

Plaintiff points to diagnostic test results – i.e., x-ray reports (R. 328, 329, 386) and MRI reports (R. 248-50) -- to substantiate her subjective complaints.  However, these

reports merely provide evidence of an underlying medical condition; thus, they only satisfy the first prong of the Eleventh Circuit pain standard.

None of the medical evidence cited by Plaintiff confirms the severity of her alleged pain, nor does it show that Plaintiff's medical condition is of such a severity that it can reasonably be expected to give rise to her alleged pain.

First, Plaintiff referred to reports by James A. Thesing, D.O. who described July 16, 2007 x-rays of Plaintiff's cervical spine and right hip. (R. 328-29, 386). Dr. Thesing diagnosed Plaintiff with degenerative disc disease at C4-C5 and C5-C6 and concluded that her right hip x-ray was "unremarkable" with no evidence of arthritis or acute bony changes.

Second, Plaintiff mentions the results of an MRI of Plaintiff's cervical spine on May 4, 2006. (R. 248-50.) Charles L. Domson, M.D. analyzed the MRI and found "mild" disc bulges at C4-C5 and C6-C7 and a bulging disc at C5-C6. However, these studies provide no evidence that Plaintiff's cervical degenerative disc disease – which the ALJ found to be a severe impairment – was not adequately accounted for by the ALJ's decision to limit her to sedentary work.

Plaintiff also contends that the evidence shows that Plaintiff "consistently" complained of cervical pain and that it was noted that Plaintiff demonstrated "pain characteristics." Plaintiff specifically points to the Comprehensive Medical Evaluation performed on June 13, 2006 by Dr. DePaz. (R. 314-15.) While Plaintiff reported pain, Dr. DePaz opined that Plaintiff could perform light to moderate level activity with no lifting greater than 25-30 pounds and no overhead activities, with breaks as needed. On September 14, 2006, Dr. DePaz released Plaintiff to light duty activity with no lifting

greater than 20-25 pounds with no repetitive stooping, squatting, twisting, bending activities and breaks as needed. (R. 299-300.)

Plaintiff also argues that the ALJ improperly disregarded the opinion of Ms. Hartsell, a physical therapist who completed a "Physical Capacity Assessment." Ms. Hartsell opined that Plaintiff was unable to perform sedentary and/or light to heavy work activities. (R. 460-66.)The ALJ accorded this opinion "little weight" because it was a finding of fact reserved to the Commissioner and Ms. Hartsell is not a physician.

Pursuant to the regulations, physical therapists are not considered "acceptable medical sources," but rather "other sources."  Thus, evidence from physical therapists cannot establish the existence of an impairment and their opinions are not entitled to any special consideration.[32]  While the Social Security Administration has acknowledged that opinions from other medical sources are "important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file," an ALJ is not required to accept the opinion of an individual who is not listed as an acceptable source of medical evidence.[33]

Morever, Ms. Hartsell's opinion that Plaintiff could not perform even sedentary work conflicts with the opinions of two of Plaintiff's treating physicians – Dr. Pamintuan and Dr. DePaz – both of whom concluded that Plaintiff could perform light work with some limitations. (R.  237, 238, 300, 302, 315.)  When weighing evidence from other sources, an ALJ should consider how consistent that opinion is with other evidence in the

---

[32] 20 C.F.R. §404.1513(a), (d)(1), 404.1527(a)(2), 416.913(a),(d)(1), 416.927(a)(2).

[33] SSR 06-03p; <u>Frantz v. Astrue</u>, 509 F.3d 1299 (10th Cir. 2007); 20 C.F.R. §§404.1513(d), 416.913(d).

record.[34] The opinions of acceptable medical sources are entitled to greater weight than the opinion of other sources, such as Ms. Hartsell.[35]

In addition, Dr. Pagano's opinion (R. 372-76) contradicts Ms. Hartsell's opinion regarding Plaintiff's debilitating limitations. Dr. Pagano observed that Plaintiff ambulated without difficulty; and that she got on and off the exam table, out of the chair and dressed/undressed without any difficulty. On examination, Plaintiff had a normal range of motion in her cervical and lumbar spine, elbow, right shoulder, left hip and knees. While range of motion in her left shoulder was decreased, Dr. Pagano opined that this was due to her "extraordinarily poor effort." Dr. Pagano concluded that the limitations from Plaintiff's impairments were "minimal" at most.

Accordingly, because the ALJ articulated numerous reasons for discrediting Plaintiff's pain testimony, and those reasons were supported by substantial evidence, the ALJ properly evaluated Plaintiff's subjective complaints.

**B.    The ALJ Properly Relied On The Grids**

Because the ALJ found that Plaintiff could not return to her past relevant work, the burden of proof shifted to the Commissioner to establish that the claimant could perform other work that exists in the national economy.[36] The burden of showing by substantial evidence that a person who can no longer perform his former job can engage in other substantial gainful activity is in almost all cases satisfied only through the use of

---

[34] SSR 06-03p.

[35] 20 C.F.R. §§404.1513(a), 416.913(a).

[36] See Foote v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995).

vocational expert testimony.[37] It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy.[38]

In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant.[39] This burden may sometimes be met through exclusive reliance on the "grids."[40] However, exclusive reliance on the "grids" is not appropriate "*either* when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has non-exertional impairments that significantly limit basic work skills."[41] If either condition exists, the ALJ is required to consult a vocational expert.[42]

Plaintiff argues that the ALJ erred by applying the grids because Plaintiff could not perform a full range of sedentary work based on Ms. Hartsell's opinion that Plaintiff cannot lift more than five pounds occasionally and is limited in her ability to sit, stand and walk. Plaintiff is essentially challenging the ALJ's RFC assessment. The ALJ found that Plaintiff could perform the full range of sedentary work, with a limitation to climb, balance, stoop, kneel, crouch and crawl only occasionally. As discussed above, substantial

---

[37] See id.

[38] See id.

[39] See Allen v. Sullivan, 880 F.2d 1200, 1201 (11th Cir. 1989).

[40] Foote, 67 F.3d at 1558.

[41] See Phillips v. Barnhart, 357 F.3d 1232, 1242 (11th Cir. 2004)(quoting Francis v. Heckler, 749 F.2d 2565, 1566 (11th Cir. 1985.)

[42] See id.

evidence supports the ALJ's RFC finding. The postural limitations adopted by the ALJ for climbing, balancing, stooping, kneeling, crouching, and crawling do not significantly erode the occupational base for the full range of sedentary work because those activities are not usually required in sedentary work.[43] Accordingly, the ALJ did not err in applying the grids.

## V. CONCLUSION

In view of the foregoing, the decision of the Commissioner is **AFFIRMED** under sentence four of 42 U.S.C. § 405(g). The Clerk is directed to enter final judgment consistent with this Order and to close the file.

**IT IS SO ORDERED.**

**DONE AND ORDERED** in Ocala, Florida, on September 15, 2010.

GARY R. JONES
United States Magistrate Judge

Copies to:
All Counsel

---

[43] SSR 96-9p